**Michael GIBSON, Plaintiff–Appellant,**

**v.**

**Jesse BROWN, Secretary, Department of Veterans Affairs, Defendant–Appellee.**

**No. 96–3776.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 24, 1997.

Decided March 3, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied May 7, 1998.

Timothy M. Kelly (argued), Chicago, IL, for Plaintiff–Appellant.

Ernest Y. Ling (argued), Office of the United States Attorney, Civil Division, Chicago, Il for Defendant–Appellee.

Before RIPPLE, MANION and KANNE, Circuit Judges.

MANION, Circuit Judge.

Michael Gibson, a career federal employee at the Department of Veterans Affairs, experienced sex discrimination in 1992 when he applied to be a supervisory accountant at his supply depot but was turned down by his two female supervisors. The EEOC ordered Gibson's promotion (and backpay); but Gibson filed suit in the district court when the VA was slow to comply. By the time the district court ruled on his suit, the VA had implemented most of the Commission's order, making the complaint largely moot. But Gibson's claim for compensatory damages remained. The court dismissed that claim after concluding that Gibson never asked the EEOC to compensate him for the VA's discrimination. We reverse.

**I.**

In 1988 Michael Gibson began his career working for the VA as an accountant in the agency's Albuquerque, New Mexico facility. He transferred in 1990 to the VA supply depot in Hines, Illinois, where he later applied for a promotion to become a supervisory accountant (at the time, he was a GS–9 accountant). He did not get the promotion, and when Gibson's two female supervisors selected a woman for the position instead of him, Gibson filed a timely Title VII claim alleging sex discrimination. In July 1993, about a year after he had filed his claim, the VA issued its final agency decision finding no discrimination. Gibson appealed to the EEOC. In October 1995, the Commission reversed the VA, finding that the VA had indeed discriminated against Gibson in the promotion decision.

In the federal domain the EEOC's final determinations of discrimination are binding against government agencies unless the complainant himself seeks de novo review of that finding in federal court. See 29 C.F.R. § 1614.504(a) ("A final decision that has not been the subject of an appeal or civil action [by the complainant] shall be binding on the agency."); Morris v. Rice, 985 F.2d 143, 145 (4th Cir.1993) ("[Congress] provided that final decisions of the EEOC were to be binding on federal agencies."). Accordingly, along with the parties we acknowledge that the VA discriminated against Gibson when his supervisors chose a less experienced woman to be the supervisory accountant at

Gibson's supply depot. The Commission also provided a remedy for the discrimination: it ordered the VA to promote Gibson and issue him backpay. The VA did these things, but reluctantly (a month late), prompting Gibson to file a federal complaint in district court seeking compliance with the Commission's nonappealable order. *See* 29 C.F.R. § 1614.408(a).

In the district court, Gibson asked for much of the relief that the VA belatedly gave him, which meant that for the most part his complaint was moot by the time the VA moved to dismiss it. But Gibson's claim for compensatory damages remained-specifically, he asked for compensatory damages relating to mental anguish and emotional distress resulting from the VA's discrimination (and experienced over the ensuing three years, during which Gibson was forced to work for the same supervisor who discriminated against him[1]). The district court interpreted the claim for compensatory damages as an entirely new claim of discrimination, and then dismissed it because Gibson did not present it in the first instance to the EEOC (or, in administrative law parlance, because Gibson had failed to exhaust his administrative remedies). The district court added that even if it interpreted the new claim as one seeking only relief (as we interpret it), *viz.* compensatory damages, the same rule of exhaustion would apply and require its dismissal.

Apparently the district court interpreted Gibson's claim for compensatory damages (as Gibson phrased it, damages for the "humiliation, mental anguish and emotional distress" caused by the VA's discrimination) as a claim for retaliation or postdiscriminatory harassment. Gibson does complain that he was forced to work for three years (from 1992–95, while the appeals were pending) for the same supervisor who had discriminated against him, but we do not interpret this as a

new claim of discrimination. Under the Civil Rights Act of 1991, claims for compensatory damages are claims for "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." *See* § 1981a(b)(3). Gibson asks for exactly these damages (even repeating the statute's language concerning "mental anguish"). Accordingly, we will treat his claim as one seeking recovery for the VA's discrimination rather than a brand new claim of discrimination.[2] As far as the government is concerned, the distinction ultimately makes no difference—whether Gibson raises a new instance of discrimination or a new demand for relief, it is barred because Gibson never presented it to the EEOC. Having determined that Gibson's complaint is a claim for damages—not a new claim of discrimination—we are left to decide whether the government correctly argues that it is barred anyway.

## II.

There is some dispute over whether Gibson asked the EEOC for compensatory damages. If he did, then the government's failure-to-exhaust argument obviously is a nonstarter. But both parties agree that Gibson never asked to be compensated for emotional distress, or humiliation, nor did he invoke any other term typically associated with a demand for compensatory damages. (At one point, Gibson did instruct the EEOC investigator that he would settle his case for a "monetary cash award"; the relief ordered by the EEOC included backpay.) It would be simpler if we could say that Gibson put the EEOC on notice that he was seeking compensatory damages (as opposed to, say, backpay, which is considered equitable relief, § 1981a(b)(2)), but the record does not support it. Accordingly, we must now decide whether his failure to exhaust administrative

---

1. We express no opinion as to whether the working environment described by Gibson is worthy of compensatory damages.

2. Even if we had interpreted Gibson's claim to be one of retaliation (for bringing his discrimination charge), we might not have agreed with the district court that Gibson was required to file a new charge of discrimination with the EEOC. A com-

plainant need not file a new charge of discrimination to complain that the defendant retaliated against him for filing the first charge. *See McKenzie v. Illinois Dep't of Transp.,* 92 F.3d 473, 482 (7th Cir.1996). "In such cases, only a single filing [is] necessary to comply with the intent of Title VII." *Id.*

remedies with respect to compensatory damages means he could not later obtain these damages from the district court.

Ordinarily, a failure to exhaust administrative remedies on an issue means that the complainant may not press his claim in federal court. *McCarthy v. Madigan*, 503 U.S. 140, 144–45, 112 S.Ct. 1081, 1085–87, 117 L.Ed.2d 291 (1992). Exhaustion "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *Id.* at 145, 112 S.Ct. at 1086. But it could go without saying that a party is not required to seek relief from an administrative agency (before seeking it from a federal court) if the agency does not have the power to redress a claim in the way the complainant requests. *Id.* at 148, 112 S.Ct. at 1088. In other words, while an administrative agency may be "competent to adjudicate the issue presented," (here, Gibson's claim of discrimination), exhaustion is not required if it "lack[s] authority to grant the type of relief requested" (in this case, money damages). *Id., citing McNeese v. Board of Ed. for Community Unit School Dist. 187*, 373 U.S. 668, 675, 83 S.Ct. 1433, 1437–38, 10 L.Ed.2d 622 (1963) (students seeking to integrate public school need not file complaint with school superintendent because the "Superintendent himself apparently has no power to order corrective action" except to request the Attorney General to bring suit); *Montana Nat'l Bk. of Billings v. Yellowstone County*, 276 U.S. 499, 505, 48 S.Ct. 331, 333, 72 L.Ed. 673 (1928) (taxpayer seeking refund not required to exhaust where "any such application [would have been] utterly futile since the county board of equalization was powerless to grant any appropriate relief").

In this case, Gibson says that while the EEOC can adjudicate the merits of his discrimination claim, and even provide equitable relief such as backpay and a promotion (both of which it ordered in his case), asking the EEOC to issue compensatory damages would be asking it to do what it has no authority to do. (Nothing in the statute or regulations explicitly rules out the idea, though the only payments mentioned in the regulations relate to "loss of earnings"—presumably backpay-caused by the federal agen-

cy's discrimination. *See* 29 C.F.R. § 1614.501(a).)

On the one hand it sounds logical that the EEOC can issue compensatory damages. After all, the agency was created by Congress not only to investigate complaints of discrimination, but, in the federal sector, to adjudicate them. And more than this, in the federal sector, Congress empowered the EEOC to enforce Title VII's antidiscrimination provisions by issuing "such rules, regulations, orders and instructions as it deems necessary and appropriate to carry out its responsibilities." 42 U.S.C. § 2000e–16(b). It is not unreasonable to conclude that this mandate might be broad enough to allow the EEOC to award compensation for mental anguish and emotional distress, much like the damages Gibson seeks in this case. Indeed, the Fifth Circuit cited this statutory language in concluding that Congress intended the EEOC to redress discrimination by any means necessary, including by issuing awards of compensatory damages; the court punctuated its determination by noting that the statute already allows the Commission to issue back pay, "which is a form of compensatory damages." *Fitzgerald v. Secretary, Veterans Affairs*, 121 F.3d 203, 207 (5th Cir. 1997). The Fifth Circuit certainly was correct to turn first to the language of Title VII to determine the scope of the EEOC's binding adjudicative powers, though we note its misstep in referring to backpay as a subset of compensatory damages. The Civil Rights Act of 1991 (governing awards for compensatory damages under Title VII) plainly states that they are distinct remedies. *See* 42 U.S.C. § 1981a(b)(2) ("Compensatory damages ... shall not include backpay").

*Fitzgerald* places some emphasis on the EEOC's conclusion that the agency can issue awards for compensatory damages; the EEOC reached that determination through its adjudicative rather than rule-making authority. The EEOC is free to choose that route to announce new principles (even a principle as significant as the one at play in this case), *see SEC v. Chenery Corp.*, 332 U.S. 194, 202, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947), but the availability of its rule-making powers means that "it has less rea-

son [than a court] to rely upon *ad hoc* adjudication to formulate new standards of conduct." *Id.* Instead, the "function of filling in the interstices of regulatory statutes should be performed, as much as possible, though [the] quasi-legislative promulgation of rules to be applied in the future." *Id.* Even allowing some measure of deference to the EEOC's position, we note that the decisions themselves contain no particularly persuasive reasons why the agency should be allowed to issue compensatory damages, other than the reasons already noted by *Fitzgerald* itself. It appears that *Fitzgerald* cites these agency decisions (at least six of them) in order to give them deference, not because it finds them in any way convincing.

We have no difficulty in affording the EEOC a measure of deference—even when interpreting its own powers under a statutory scheme—so long as the interpretation is consistent with the plain language of the statute. *See EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 257–58, 111 S.Ct. 1227, 1235–36, 113 L.Ed.2d 274 (1991) (rejecting EEOC's interpretation that Title VII applies extraterritorially because it "lack[ed] support in the plain language of the statute"). The section of Title VII pertaining to the federal sector, 42 U.S.C. § 2000e–16, is silent on the issue of compensatory damages, which makes sense because they were not even available in Title VII suits until Congress passed the Civil Rights Act of 1991, 42 U.S.C. § 1981a. Section 1981a mentions compensatory damages in several places: in announcing their availability in "an action brought by a complaining party" (§ 1981a(a)(1)), in excluding backpay from them (§ 1981a(b)(2)), in limiting their amount (§ 1981a(b)(3)), and, finally, in legislating that "[i]f a complaining party seeks compensatory or punitive damages ... (1)any party may demand a trial by jury" (§ 1981a(c)). It is this last provision of the statute that is not discussed in *Fitzgerald* or, for that matter, in any of the EEOC decisions relied upon in *Fitzgerald.*

We cannot sidestep it. Our reading persuades us that it means what it says: if the complaining party (defined by § 1981a(d) as someone capable of suing in the first place) seeks compensatory damages, either party,

including the defendant government agency, may demand a jury trial on the issue. Of course the EEOC does not provide jury trials; they are obtained in federal district court. *See* § 1981a(c)(2) ("the court shall not inform the jury of the limitations [on compensatory damages] described in subsection (b)(3) of this section"). Perhaps we could say that the EEOC has the right to issue compensatory damages in the first instance, and the losing party may seek de novo review of the damages by demanding a jury trial. Not only would that be expensively duplicative, but it also probably would violate the rule that the EEOC's final determinations are binding against the agency (and thus are nonappealable). *See* 29 C.F.R. 1614.504(a). So we are left with this: if the EEOC issues compensatory damages, they necessarily are binding against the employing agency, meaning that the agency is deprived under the statute of its right to a jury trial. We agree with Gibson that the statutory scheme promulgated by Congress does not allow the EEOC to issue what would be nonappealable awards for compensatory damages; compensatory damages are awarded within the jury system established by the statute.

We part company with *Fitzgerald* in reaching this conclusion for several reasons. Most important of these is the statutory language that *Fitzgerald* does not cite—the right of the complainant or the government agency to demand a jury trial under § 1981a(c) if the complaining party seeks compensatory damages. Under *Fitzgerald's* approach (and for that matter the EEOC's), the right to a jury trial under that section is lost. If we are to give effect to each section or provision in a statute, *United States v. Franz*, 886 F.2d 973, 978 (7th Cir.1989), it follows that we are particularly reluctant to interpret a statute in a way that altogether strikes a provision and a significant procedural right provided by it. It is quite possible that the *Fitzgerald* court never discusses the jury trial issue because the parties never raised it, thereby never alerting the court that the right to a jury trial conferred by § 1981a compels the conclusion we make today. Indeed, had the Fifth Circuit benefitted from as full a briefing on the issue as we have before us, it

might well have reached a different conclusion.

In addition to the statutory language conferring a right to a jury trial, we note that the statute allows compensatory damages only "[i]n an *action* brought by a complaining party" under section 717 (the part of Title VII allowing federal employees to sue the government for discrimination, 42 U.S.C. § 2000e–16). *See* 42 U.S.C. § 1981a(a)(1) (emphasis added). Is an action a federal suit in district court, an EEOC proceeding, or both? Congress has demonstrated that it knows the difference between a civil action and an administrative proceeding—in fact, it distinguishes between the two in the statute. *See* 42 U.S.C. § 1981a(d)(1)(A) (defining complaining party as "a person who may bring an *action or proceeding* under Title VII") (emphasis added).

Indeed, throughout the statutory scheme, Congress makes it clear that "actions" are civil actions pursued in courts, not administrative agencies. Section 706 of Title VII (the part applying to the private sector) tells us that the *United States district courts*—not the EEOC or any other administrative agency—"have jurisdiction of *actions* brought under [Title VII]." *See* 42 U.S.C. § 2000e–5(f)(3). The same holds true in federal sector suits like Gibson's. *See* § 717 of Title VII, 42 U.S.C. § 2000e–16 ("civil actions" against the government are to be pursued exactly "as provided" in section 706). Thus, when Congress uses the term "action" in Title VII, it is speaking of civil actions filed in federal court, not complaints of discrimination lodged with the EEOC. In enacting the Civil Rights Act of 1991, Congress could have chosen a more expansive term than "action" or even redefined "action" to include EEOC proceedings, but it did not.[3]

One additional factor persuades us that a government agency may not be held liable for compensatory damages without the benefit of a jury trial. By its terms, Title VII constitutes a waiver of sovereign immunity because it allows the government to be sued,

*Irwin v. Department of Veterans' Affairs*, 498 U.S. 89, 94–95, 111 S.Ct. 453, 456–57, 112 L.Ed.2d 435 (1990); the Civil Rights Act of 1991 extends that waiver by allowing the government to be sued for compensatory damages. But unless Congress tells us otherwise, we cannot further extend that waiver by allowing the government to be liable for compensatory damages at the administrative level (and without the benefit of a jury trial). *See id.* at 95, 111 S.Ct. at 457 (interpreting the very same provisions of Title VII—allowing suits against the government—and noting that "[a] waiver of sovereign immunity cannot be implied but must be unequivocally expressed.").

As we have discussed, we think the government's statutory right to a jury trial is a clear expression by Congress that it has limited its waiver of sovereign immunity. If Congress wishes to extend the waiver of sovereign immunity so that the government may be liable for compensatory damages without the benefit of a jury trial, it is free to say so unequivocally. What the government asks us to do in this case is read an extension of the waiver into Title VII, for good reason something we should not do. The Supreme Court has instructed that "limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Lehman v. Nakshian*, 453 U.S. 156, 161, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981). In other words, a court has no business tinkering with elaborate statutory machinery like Title VII to find a waiver of sovereign immunity; the Government's consent to be sued must be interpreted, "in terms of its scope, in favor of the sovereign," *Lane v. Pena*, 518 U.S. 187, ——, 116 S.Ct. 2092, 2096, 135 L.Ed.2d 486 (1996), and not "enlarged ... beyond what the [statutory] language requires." *United States v. Nordic Village Inc.*, 503 U.S. 30, 34, 112 S.Ct. 1011, 1014–15, 117 L.Ed.2d 181 (1992). *See also United States v. Williams*, 514 U.S. 527, 531, 115 S.Ct. 1611, 1615–16, 131 L.Ed.2d 608 (1995) (when confronted with a purported

---

**3.** In addition to the statute, the Regulations distinguish between civil actions (filed in court) and complaints (filed with administrative agencies) by allowing a complainant "who has filed an individual complaint" to file a "civil action in an appropriate United States District Court" within 90 days of a final agency decision. *See* 29 C.F.R. § 1614.408(a).

waiver of the Federal Government's sovereign immunity, the Court will "constru[e] ambiguities in favor of immunity"). In this case, we would be doing more than tinkering—we would be redrafting (actually, reducing) the scope of sovereign immunity under the statute by allowing an administrative agency to issue nonappealable awards for compensatory damages, thereby wresting the matter from district courts and juries. That would not be consistent with our role, or with the statute Congress wrote.

### III.

In concluding that the EEOC may not order the government to pay compensatory damages, we recognize the EEOC's responsibility to issue any orders it deems "necessary and appropriate." We are not displacing any right that the EEOC historically has enjoyed. We simply conclude that Congress has determined it is inappropriate for the EEOC to order the government to pay compensatory damages, a right which it never had in the first place. *Fitzgerald* concludes otherwise, but the statutory provisions at play convince us not to follow the Fifth Circuit's lead.[4] "Our duty is to independently decide our own cases, which sometimes results in disagreements with decisions of the other circuits." *Atchison, Topeka and Santa Fe Railroad Co. v. Pena*, 44 F.3d 437, 443 (7th Cir.1994) (en banc), *aff'd. sub nom. Brotherhood of Locomotive Engineers v. Atchison, Topeka and Santa Fe Railroad Co.*, 516 U.S. 152, 116 S.Ct. 595, 133 L.Ed.2d 535 (1996). In this case, that means Gibson should have been allowed to pursue his claim in the district court. We already have concluded that it was not a new claim of discrimination. It was a claim for compensatory damages relating to his employer's discrimination, and it was not redressable by the EEOC. We reverse the district court and remand Gibson's claim so that it may be tried to a jury, which is what he has demanded in his complaint and what the statute allows.

---

4. Because of this disagreement, this opinion was circulated to the full court for a vote on whether to grant rehearing en banc in advance of decision. *See* Circuit Rule 40(e). There were no votes to grant rehearing.