Michele TUOHEY, Plaintiff–Appellant,

v.

CHICAGO PARK DISTRICT,
Defendant–Appellee.

No. 97–2089.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 13, 1998.

Decided June 19, 1998.

Nicholas F. Esposito (argued), Esposito, Heuel & Schramm, Chicago, IL, for Plaintiff–Appellant.

James J. Oh (argued), Allison Zousmer Stein, Connelly, Sheehan & Moran, Caroline E. Rdzanek, Chicago Park District, Law Department, Chicago, IL, for Defendant–Appellee.

Before CUMMINGS, RIPPLE, and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Michele Tuohey–Martinez ("Tuohey") filed suit against her former employer, the Chicago Park District, alleging that the Park District had discriminated against her on the basis of her pregnancy. See 42 U.S.C. §§ 2000e(k), 2000e–2(a)(1). A jury found in the park district's favor. Tuohey appeals, contending that the district court should have entered judgment as a matter of law in her favor based on the findings of the park district's human rights officer and, alternatively, that the jury's verdict is not supported by the evidence. We affirm.

## I.

This case comes to us after a trial on the merits of Tuohey's pregnancy discrimination claim. The jury, as we have noted, found for the park district and against Tuohey. Our summary of the facts, consequently, is one favorable to the park district. *See Frazell v. Flanigan*, 102 F.3d 877, 879 (7th Cir.1996), citing *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 511 (7th Cir.1993).

Tuohey began work in November 1991 as a staff assistant in the park district's communications department. Her responsibilities included preparing press releases, writing speeches for district executives, coordinating district events, and public relations. ReGina

Hayes was Tuohey's immediate supervisor; Shawnelle Richie headed the communications department.

Tuohey learned in August 1992 that she was pregnant. As a result of the pregnancy, she experienced severe bouts of nausea that caused her to be absent from work. Park district employees receive a rather generous two months of paid leave time annually, which includes vacation, holidays, and sick time. By September, Tuohey had exhausted her paid leave time and Hayes wondered how her continued absences should be designated on the time sheets that Hayes completed. Dr. Julia Jones, the park district's medical director, advised Hayes to record the absences as unpaid leave until Jones received appropriate documentation from Tuohey's physician demonstrating the medical necessity for her absences. Hayes, who was aware that Tuohey was pregnant, in turn asked Tuohey to telephone the office whenever she was going to be out sick.

In September 1992, Tuohey contacted Anne McGuire, a claims technician with the Park Employees Pension and Annuity Fund, to apply for short-term disability or "S" pay. Short-term disability pay amounts to 45 percent of the employee's salary and must be approved by the pension and annuity fund. Payments are authorized on a monthly basis for the prior month's absences. McGuire sent Tuohey an application for S pay and instructed her to return the application by October 12 if she wished to have her September absences considered by the fund at its October 21st meeting. Tuohey's application for disability pay was not addressed by the fund until its November meeting, however; and at that time the fund approved S pay for her absences in both September and October. The delay was occasioned by two circumstances. First, according to McGuire, the fund did not have a completed application from Tuohey until October 13, 1992, one day beyond the deadline for the October meeting.[1] Second, as of October 12, the

communications department had not taken the required step of changing the recorded designation of Tuohey's absences from "C" (unpaid) to S (short-term disability) status. That did not occur until after October 19, when Dr. Jones advised Richie that Tuohey's physician had verified Tuohey's medical condition. Eventually, however, Tuohey did receive all of the S pay to which she was entitled for absences occurring in September, October, November and December.

Tuohey returned to work in the communications department in December after exhausting all of the paid short-term disability leave for which she was eligible. On January 13, 1993, a reporter from the CHICAGO SUN-TIMES contacted Hayes about the park district's upcoming programs for Black History Month. Tuohey had coordinated media planning for Black History Month in 1992, and so Hayes asked her to gather the information that the SUN-TIMES reporter needed by 3:00 p.m. that same day. Tuohey did not complete the assignment, however, after the director of the South Shore Cultural Center, which had sponsored most of the programming the year before, failed to return her telephone calls. Tuohey had not attempted to contact other individuals to obtain the information. Hayes put the SUN-TIMES reporter off for a day and told Tuohey to have the assignment completed the following day. When Tuohey again did not complete the assignment, Hayes summoned her into her office and reprimanded her in a relatively loud tone of voice. Tuohey left the meeting accusing Hayes of harassing her because she was pregnant.

On January 15, Tuohey prepared an internal complaint against Hayes rather than reporting for work. Hayes, meanwhile, gathered the information that the SUN-TIMES reporter had requested. It took her a total of 45 minutes to complete that task. Tuohey subsequently reported for work on January 18 and 19, but then was absent from work until March 15.[2] Based on her

---

1. The application bore a "received" date stamp of October 13, 1992, on which McGuire relied for her testimony.

2. Tuohey's physician wrote to the park district on January 20, 1993, indicating that she had

advised Tuohey to refrain from working until her work conditions were less stressful. Tuohey's attorney subsequently wrote to the park district superintendent requesting an immediate change in Tuohey's work assignment. However, on Jan-

doctor's advice that she could work in a less stressful environment, Tuohey returned to work on March 15 and upon her request was temporarily reassigned to the parks and recreation department. She worked there until March 25, when on her doctor's advice she commenced maternity leave. She gave birth to her first child on April 15, 1993.

At the end of February, in advance of Tuohey's maternity leave, Robert Medina, the park district's equal employment opportunity administrator and human rights officer, completed his investigation of the internal complaint Tuohey had lodged in January after Hayes had reprimanded her. Medina's written report concluded that there was "cause to substantiate" Tuohey's allegation that the park district had violated its human rights ordinance by discriminating against Tuohey because she was pregnant. Medina cited three grounds for his conclusion: (1) Tuohey was the only worker under the direct supervision of Hayes and Richie who was required to telephone the office each day she was on sick leave to verify that she was ill;[3] (2) it took an "inordinate amount of time" for Tuohey's short-term disability pay to be approved in the Fall of 1992; and (3) Hayes and/or Richie had treated Tuohey "in a berating and insulting manner," the stress of which had caused Tuohey to suffer adverse physical reactions. Medina recommended that Tuohey be transferred to a different department, that she be given a sick pay grant from the last date of her active employment until she returned to work at the conclusion of her maternity leave, that a mandatory sensitivity session be scheduled for all personnel in the communications department, and finally that Richie and Hayes be given written reprimands. So far as the record reveals, the park district never formally adopted or rejected Medina's report;

and the only subsequent action it took consistent with Medina's recommendations was to transfer Tuohey to a different department.

In October 1993, when Tuohey's six months of maternity leave expired, a park district attorney contacted Tuohey's attorney to determine whether she intended to return to work. By this time, Tuohey had enrolled as a full-time student in a Masters of Business Administration program at the University of Illinois. The attorneys exchanged a series of letters over the next few weeks that culminated in a declaration by the park district that it would no longer hold Tuohey's former position open for her.[4] When Tuohey eventually returned to work in May 1994, after taking her final exams, she was assigned to the landscape department, initially as a staff assistant receiving the same compensation she had earned previously in the communications department. Subsequently, however, she was re-designated a secretary and suffered a decrease in pay.

Tuohey gave birth to a second child in April, 1995. Shortly after she gave the park district notice in late July 1995 that the was ready to return to work from maternity leave, she was informed that she had been terminated.

Tuohey filed suit alleging that the park district had discriminated against her on the basis of her national origin (Tuohey is an American of Cuban descent) as well as her two pregnancies. The district court ultimately granted summary judgment in favor of the park district on the national origin claim, finding there to be no genuine issue of fact as to whether the park district had discriminated against Tuohey on the basis of her national origin. R. 111 at 19. The court also found that the allegations concerning events post-dating her first pregnancy were beyond the scope of the charge that she had

---

uary 27, Jones wrote to Tuohey's physician confirming a telephone conversation in which the two physicians had agreed that Tuohey should remain at home for at least five weeks.

3. On February 8, 1993, after speaking with Medina, Hayes had written to Tuohey to inform her that because she was on extended medical leave, she need not telephone the communications department each day to report that she was ill.

4. Indeed, in February 1994, the park district posted a "notice of job opportunity" for the position of staff assistant in the communications department. Tuohey was not notified of that posting, and eventually someone else was hired to fill that position.

filed with the EEOC, and for that reason the court granted summary judgment in favor of the defendant as to those allegations as well. *Tuohey v. Chicago Park District*, No. 95 C 1429, 1997 WL 12791, at *6 (N.D.Ill. Jan. 10, 1997).

Tuohey's claim of discrimination resulting from her first pregnancy proceeded to trial. Shortly before the trial began, Tuohey filed a motion asserting that she was entitled to judgment in her favor as to liability based solely on Medina's report finding cause to substantiate her allegation that the park district had engaged in pregnancy discrimination. The district court denied the motion, but allowed Medina's report into evidence at trial. After hearing four days of testimony, the jury returned a verdict in the park district's favor.

## II.

■■■■ The first of Tuohey's two arguments on appeal is that the district court improperly refused to grant Medina's finding of cause to substantiate Tuohey's allegations dispositive weight on the question of whether the park district discriminated against Tuohey. She reasons that because Medina was charged with investigating and making final determinations on complaints made under the district's human rights ordinance, the court was bound by his conclusions and could not permit the park district to re-litigate the issue of pregnancy discrimination in Tuohey's subsequent Title VII suit. We consider this issue of law *de novo. See Thomas v. United States*, 41 F.3d 1109, 1113 (7th Cir.1994).[5]

■■■■ The district court correctly declined to accord Medina's report dispositive weight. Medina was charged with enforcing a local ordinance. Whatever overlap there may be between that ordinance and Title VII, Medina's authority was confined to the former. He could not, as the park district's EEO administrator and human rights officer, make determinations that would bind a federal court applying federal law. Even an EEOC "reasonable cause" finding akin to Medina's would not have been dispositive of the subsequent litigation.[6] Although Congress has given the EEOC the authority to make conclusive determinations against federal agencies (*see, e.g., Gibson v. Brown*, 137 F.3d 992, 993 (7th Cir.1998)), that authority does not extend to state or private employers. *Morris v. Rice*, 985 F.2d 143, 145 (4th Cir.1993); *Moore v. Devine*, 780 F.2d 1559, 1562–63 (11th Cir.1986); *see also Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991) (judicially unreviewed findings of state administrative agency on plaintiff's age discrimination claim have no preclusive effect on suit brought pursuant to federal age discrimination statute); *University of Tennessee v. Elliott*, 478 U.S. 788, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986) (same—Title VII). It would be anomalous, at the least, to suggest that a local human rights officer could bind an employer on questions of Title VII liability when the very federal agency charged with administering that statute could not. Within the constraints of the federal rules, a district court of course has the discretion to

5. Tuohey's motion asserting the binding nature of Medina's report was styled in relevant part as a motion for summary judgment. As the park district points out, once a trial has taken place, the denial of a summary judgment motion typically is not appealable. *Eastern Natural Gas Corp. v. Aluminum Co. of America*, 126 F.3d 996, 1002 (7th Cir.1997), *cert. denied,* — U.S. —, 118 S.Ct. 1796, 140 L.Ed.2d 937 (1998), citing *Watson v. Amedco Steel, Inc.*, 29 F.3d 274, 277 (7th Cir.1994). Whether Medina's report is binding on the question of liability, however, is a potentially dispositive legal question that is not rendered moot by a trial. *See, e.g., Rekhi v. Wildwood Indus., Inc.*, 61 F.3d 1313, 1318 (7th Cir.1995). The district court's decision to deny the report preclusive weight is therefore one we may consider on appeal.

6. Standing alone, of course, Medina's finding of cause to substantiate Tuohey's allegation that the park district had committed pregnancy discrimination would appear to be no more than a preliminary assessment. *See EEOC v. Harvey L. Walner & Assocs.*, 91 F.3d 963, 968 n. 3 (7th Cir.1996), citing *EEOC v. J.M. Huber Corp.*, 927 F.2d 1322, 1331 (5th Cir.1991). However, the district court construed the park district's human rights ordinance to bestow on Medina final decision-making authority as to whether discrimination had occurred. R. 111 at 5, 7–8. That question is not before us on appeal, and so we shall assume that Medina's findings in this respect were indeed final.

admit into evidence the determinations of other agencies or individuals that have investigated the facts before the court. *See, e.g.,* FED.R.EVID. 801(d)(2), 803(6), (8); *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 60 & n. 21, 94 S.Ct. 1011, 1025 & n. 21, 39 L.Ed.2d 147 (1974); *Jackson v. Bunge Corp.*, 40 F.3d 239, 246 (7th Cir.1994). But those assessments by no means bind the finder of fact.

▆ Tuohey also argues that the jury's verdict was unreasonable. The district court rejected that assertion when it denied her motion for judgment as a matter of law, and we review that ruling *de novo*. *Emmel v. Coca–Cola Bottling Co. of Chicago*, 95 F.3d 627, 629 (7th Cir.1996), citing *McNabola v. Chicago Transit Auth.*, *supra*, 10 F.3d at 515. Assessing the sufficiency of the evidence underlying the verdict in favor of the park district requires us to view that evidence in the light most favorable to the district, to resolve any conflicts in the evidence in its favor, and to grant the district the benefit of all reasonable inferences. *Frazell v. Flanigan*, *supra*, 102 F.3d at 882. Only if no rational jury could have found in the park district's favor will we reverse the district court's refusal to grant Tuohey judgment as a matter of law. *See Emmel*, 95 F.3d at 630. Finally, as we have noted before, "we are particularly careful in employment discrimination cases to avoid supplanting our view of the credibility or weight of the evidence for that of both the jury (in its verdict) and the judge (in not interfering with the verdict)." *Hybert v. Hearst Corp.*, 900 F.2d 1050, 1054 (7th Cir.1990), quoted in *Emmel*, 95 F.3d at 630.

▆ We have thoroughly reviewed the trial record and agree with the district court that the jury's verdict finds ample support in the evidence. An exhaustive response to each of the many arguments Tuohey raises is unnecessary. The following observations will suffice to address Tuohey's principal attacks on the verdict:

1. Tuohey ultimately received all of the short-term disability or S pay to which she was entitled. There was a one-month delay in awarding her S pay for the days she was absent from work in September, because the pension and annuity fund did not consider her application until its November meeting. However, the jury permissibly could have found that the delay was due to Tuohey's tardiness in completing the application (R. 127 at 426), notwithstanding Tuohey's testimony that she submitted her application on time (R. 127 at 22324). To the extent that the park district itself contributed to the delay by failing to make the appropriate adjustments on Tuohey's records more expeditiously, the record does not suggest that its slowness was necessarily discriminatory. Virginia Reyes, a personnel manager with the park district, indicated that it was not out of the ordinary for such adjustments to take two months to complete. R. 127 at 384.

▆ 2. Although Hayes reprimanded Tuohey for not completing the Black History Month assignment on time, the jury readily could have found this incident not to constitute harassment stemming from Tuohey's pregnancy. Tuohey did not, in fact, complete the assignment, and even assuming that Hayes literally yelled at Tuohey (notwithstanding Hayes' testimony to the contrary), the evidence does not suggest that Hayes' treatment of Tuohey was unique. Although Medina believed that Hayes' conduct was inappropriate, he acknowledged on the witness stand that he had no comparative evidence as to the treatment of other employees who failed to complete assignments. R. 127 at 163–64. Indeed, Medina's own report, which includes the notes of his witness interviews, makes clear that Hayes and Richie regularly dressed down other employees in the same fashion. Pl.Ex. 66. To establish discrimination, Tuohey was required to show that she was treated differently from other employees because of her pregnancy. *See Oncale v. Sundowner Offshore Servs., Inc.*, —— U.S. ——, ——, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998). The evidence on this point is to the contrary.[7]

---

7. Title VII does not require employers to treat their pregnant employees better than they treat their other employees. *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 738 (7th Cir.1994); 42 U.S.C. § 2000e(k); *cf. California Fed. Sav. & Loan Ass'n v. Guerra*, 479 U.S. 272, 284–86, 107 S.Ct. 683, 691–92, 93 L.Ed.2d 613 (1987).

3. Although Tuohey suggests that she was involuntarily placed on unpaid leave from January through March, 1993, the record suggests that she in fact remained absent from work based on her own physician's advice. See n. 2, *supra;* Pl.Ex. 50, Def. Ex. 29. The fact that she was not paid was due solely to the fact that she had used all of her S time by that point.

4. Tuohey emphasizes that when she began to miss work as the result of her first pregnancy, Hayes required her to telephone the office whenever she was going to remain at home. Hayes explained that she did this so that she would know whether to expect Tuohey in the office. She also testified that she required this of all employees who took sick leave. R. 127 at 469. Reyes confirmed that employees at the park district should be calling in when ill and that she required this of her own staff. R. 127 at 379–80. The jury thus rationally could have concluded that this requirement was not discriminatory.

5. Tuohey complains that following the birth of her first child, the park district did not allow her to return to work for more than a year. Of course, the first six months of that period represented the length of time available to Tuohey as maternity leave. Tuohey points out that during that time, she called the park district to inquire how much maternity leave she had but was not contacted again until October, when her leave expired. Yet, the record is devoid of evidence that she voiced any desire to return to work earlier, or for that matter later. Even when the park district's attorney wrote that the district would not hold a position open for her, for example, Tuohey did not seek to return. See Tr. 323; Pl. Exs. 13A, 80; Def. Ex. 47. Indeed, the jury could have inferred from her failure to return to work in October that she was more interested in the MBA studies she began in August than she was in working.

6. Tuohey contends that when she eventually returned to work in May 1994, "she was not returned to her regular position or to a position of like status and pay." Tuohey Br. 24. As we noted earlier, Tuohey was at first assigned to the landscape department as a staff assistant and paid at the same rate she had been when she worked in the communications department. At some later point, however, the landscape department demoted her to the position of secretary and decreased her pay. This allegation was among those as to which the district court granted summary judgment in favor of the park district, because it was beyond the scope of Tuohey's EEOC charge. See 1997 WL 12791, at *5 & n. 4, *6. The court did permit Tuohey to introduce evidence as to this allegation insofar as it shed light upon on the park district's intent. R. 112 at 17–20. Although we agree with Tuohey that her demotion and cut in pay could support an inference of discriminatory intent, that inference was not compelled. The jury might have thought that Tuohey had foregone any claim to her position and pay as a staff assistant by not seeking to return to work when her maternity leave expired. Because Tuohey also reported to individuals other than Hayes and Richie once she began work in the landscape department, the jury might also have concluded that the demotion and cut in pay had nothing to do with her pregnancy and/or her difficulties in the communications department.

7. Finally, it is undisputed that the park district largely did not comply with the recommendations that Medina made upon finding cause to substantiate Tuohey's allegations of pregnancy discrimination. We shall assume, consistent with the district court's construction of the park district's human rights ordinance, that Medina was the final authority within the district as to whether discrimination occurred and what remedies were appropriate. See R. 111 at 4–8; *see also* n. 6, *supra.* Unquestionably, the jury could have seen the park district's failure to implement most of Medina's recommendations as proof of discrimination. The jury also heard the evidence underlying Tuohey's claim of discrimination, however, and quite obviously it did not agree that the park district had treated Tuohey adversely because of her pregnancy. See R. 116. The jury therefore could have understood the park district's refusal to follow Medina's recommendations as an act of genuine disagreement with Medina rather than pregnancy

discrimination. It may be that the district effectively ignored the authority that its own ordinance granted to Medina, but that by no means compelled a finding of pregnancy discrimination. *See Friedel v. City of Madison*, 832 F.2d 965, 973 (7th Cir.1987); *Randle v. City of Aurora*, 69 F.3d 441, 454 (10th Cir. 1995).

### III.

Tuohey's claims of disparate treatment were heard and evaluated by the jury. Although the park district's EEO administrator and human rights officer had found cause to believe that the district had committed pregnancy discrimination, that determination was not dispositive of Tuohey's Title VII claim. The jury was apprised of the circumstances underlying Medina's report, heard the criticisms of that report, and heard additional evidence that Medina did not consider. In finding for the park district, the jury necessarily concluded that whatever adverse treatment Tuohey may have suffered was not the result of her pregnancy. R. 116. That determination finds ample support in the evidence. We therefore AFFIRM the judgment and commend the district judge for the patience he demonstrated in presiding over proceedings that were often contentious and protracted.