# WEST, SECRETARY OF VETERANS AFFAIRS *v.* GIBSON

No. 98–238.   Argued April 26, 1999—Decided June 14, 1999

Breyer, J., delivered the opinion of the Court, in which Stevens, O'Connor, Souter, and Ginsburg, JJ., joined. Kennedy, J., filed a dissenting opinion, in which Rehnquist, C. J., and Scalia and Thomas, JJ., joined, *post*, p. 224.

*Barbara McDowell* argued the cause for petitioner. With her on the briefs were *Solicitor General Waxman, Acting*

*Assistant Attorney General Ogden, Deputy Solicitor General Underwood, Marleigh D. Dover,* and *Steven I. Frank.*

*Timothy M. Kelly* argued the cause and filed a brief for respondent.*

JUSTICE BREYER delivered the opinion of the Court.

The question in this case is whether the Equal Employment Opportunity Commission (EEOC) possesses the legal authority to require federal agencies to pay compensatory damages when they discriminate in employment in violation of Title VII of the Civil Rights Act of 1964, 84 Stat. 121, 42 U. S. C. § 2000e *et seq.* We conclude that the EEOC does have that authority.

## I

## A

Title VII of the Civil Rights Act of 1964 forbids employment discrimination. In 1972 Congress extended Title VII so that it applies not only to employment in the private sector, but to employment in the Federal Government as well. See Equal Employment Opportunity Act of 1972, 86 Stat. 111, 42 U. S. C. § 2000e–16. This 1972 Title VII extension, found in § 717 of Title VII, has three relevant subsections.

The first subsection, § 717(a), sets forth the basic Federal Government employment antidiscrimination standard. It says that

> "[a]ll personnel actions affecting employees or applicants for employment [of specified Government agencies and departments] shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42 U. S. C. § 2000e–16(a).

*Mark D. Roth* and *Joseph F. Henderson* filed a brief for the American Federation of Government Employees, AFL–CIO, as *amicus curiae* urging reversal.

*Edward H. Passman* and *Paula A. Brantner* filed a brief for the National Employment Lawyers Association as *amicus curiae.*

The second subsection, § 717(b), provides the EEOC with the power to enforce the standard. It says (among other things) that

> "the Equal Employment Opportunity Commission *shall have authority to enforce the provisions of subsection (a) . . . through appropriate remedies,* including reinstatement or hiring of employees with or without back pay, as will effectuate the policies of this section . . . ." 42 U. S. C. § 2000e–16(b) (emphasis added).

The third subsection, § 717(c), concerns a court's authority to enforce the standard. It says that, after an agency or the EEOC takes final action on a complaint (or fails to take action within a certain time),

> "an employee or applicant [who is still] aggrieved . . . may file a civil action as provided in section [706, dealing with discrimination by private employers], in which civil action the head of the department, agency, or unit, as appropriate, shall be the defendant." 42 U. S. C. § 2000e–16(c).

In 1991 Congress again amended Title VII. The amendment relevant here permits victims of intentional employment discrimination (whether within the private sector or the Federal Government) to recover compensatory damages. See Civil Rights Act of 1991, 105 Stat. 1072, 42 U. S. C. § 1981a(a)(1). The relevant portion of that amendment, which we shall call the Compensatory Damages Amendment (CDA), says:

> "In an action brought by a complaining party under section 706 [dealing with discrimination by private employers] or 717 [dealing with discrimination by the Federal Government] against a respondent who engaged in unlawful intentional discrimination . . . , the complaining party may recover compensatory . . . damages . . . ." 42 U. S. C. § 1981a(a)(1).

The CDA also sets forth certain conditions and exceptions. It imposes, for example, a cap on compensatory damages (of up to $300,000 for large employers, § 1981a(b)(3)(D)). And it adds: "If a complaining party seeks compensatory . . . damages under this section . . . any party may demand a trial by jury . . . ." § 1981a(c). Once the CDA became law, the EEOC began to grant compensatory damages awards in Federal Government employment discrimination cases. Compare 29 CFR pt. 1613, App. A (1990) (no reference to compensatory damages in preamendment list of EEOC remedies), with, e. g., *Jackson* v. *Runyon*, EEOC Appeal No. 01923399, p. 3 (Nov. 12, 1992) ("[T]he Civil Rights Act of 1991 . . . makes compensatory damages available to federal sector complainants in the administrative process").

## B

Respondent, Michael Gibson, filed a complaint with the Department of Veterans Affairs charging that the Department had discriminated against him by denying him a promotion on the basis of his gender. The Department found against Gibson. The EEOC, however, subsequently found in Gibson's favor and awarded the promotion plus backpay. Three months later Gibson filed a complaint in Federal District Court, asking the court to order the Department to comply immediately with the EEOC's order and also to pay compensatory damages. Complaint ¶ 17 (App. 28). The Department then voluntarily complied with the EEOC's order, but it continued to oppose Gibson's claim for compensatory damages.

Eventually, the District Court dismissed Gibson's compensatory damages claim. On appeal, the Department supported the District Court's dismissal with the argument that Gibson had failed to exhaust his administrative remedies in respect to his compensatory damages claim; hence, he could not bring that claim in court. *Gibson* v. *Brown*, 137 F. 3d 992, 994 (CA7 1998). The Seventh Circuit, however, re-

versed the District Court's dismissal. It rejected the Department's argument because, in its view, the EEOC lacked the legal power to award compensatory damages; consequently there was no administrative remedy to exhaust. *Id.*, at 995–998.

Because the Circuits have disagreed about whether the EEOC has the power to award compensatory damages, compare *Fitzgerald* v. *Secretary, Dept. of Veterans Affairs*, 121 F. 3d 203, 207 (CA5 1997) (EEOC may award compensatory damages), with *Crawford* v. *Babbitt*, 148 F. 3d 1318, 1326 (CA11 1998) (EEOC cannot award compensatory damages), and 137 F. 3d, at 996–998 (same), we granted certiorari in order to decide that question.

## II

The language, purposes, and history of the 1972 Title VII extension and the 1991 CDA convince us that Congress has authorized the EEOC to award compensatory damages in Federal Government employment discrimination cases. Read literally, the language of the statutes is consistent with a grant of that authority. The relevant portion of the Title VII extension, namely, § 717(b), says that the EEOC "shall have authority" to enforce § 717(a) "through *appropriate* remedies, including reinstatement or hiring of employees with or without back pay." 42 U. S. C. § 2000e–16(b). After enactment of the 1991 CDA, an award of compensatory damages is a "remedy" that is "appropriate."

We recognize that § 717(b) explicitly mentions certain equitable remedies, namely, reinstatement, hiring, and backpay, and it does not explicitly refer to compensatory damages. But the preceding word "including" makes clear that the authorization is not limited to the specified remedies there mentioned; and the 1972 Title VII extension's choice of examples is not surprising, for in 1972 (and until 1991) Title VII itself authorized only equitable remedies. See Civil Rights Act of 1964, 78 Stat. 261, 42 U. S. C. § 2000e–5(g) (pri-

vate sector discrimination); Equal Employment Opportunity Act of 1972, 86 Stat. 111, 42 U. S. C. § 2000e–16 (federal sector discrimination).

Section 717's language, however, does not freeze the scope of the word "appropriate" as of 1972. Words in statutes can enlarge or contract their scope as other changes, in law or in the world, require their application to new instances or make old applications anachronistic. See, *e. g., Browder* v. *United States,* 312 U. S. 335, 339–340 (1941) (new, unforeseen "use" of passport); see also *United States* v. *Southwestern Cable Co.,* 392 U. S. 157, 172–173 (1968) (cable television as "communications"); *Fortnightly Corp.* v. *United Artists Television, Inc.,* 392 U. S. 390, 395–396 (1968) (old statutory language read to reflect technological change).

The meaning of the word "appropriate" permits its scope to expand to include Title VII remedies that were not appropriate before 1991, but in light of legal change are appropriate now. The word "including" makes clear that "appropriate remedies" are not limited to the examples that follow that word. See *Phelps Dodge Corp.* v. *NLRB,* 313 U. S. 177, 189 (1941). And in context the word "appropriate" most naturally refers to forms of relief that Title VII itself authorizes—at least where that relief is of a kind that agencies typically can provide. Thus, Congress' decision in the 1991 CDA to permit a "complaining party" to "recover compensatory damages" in "an action brought under section . . . 717," by adding compensatory damages to Title VII's arsenal of remedies, could make that form of relief "appropriate" under § 717(b) as well.

An examination of the purposes of the 1972 Title VII extension shows that this permissible reading of the language is also the correct reading. Section 717's general purpose is to remedy discrimination in federal employment. It does so in part by creating a dispute resolution system that requires a complaining party to pursue administrative relief prior to

court action, thereby encouraging quicker, less formal, and less expensive resolution of disputes within the Federal Government and outside of court. See 42 U. S. C. § 2000e–16(c) (court action permitted only where complainant disagrees with final agency disposition or, if complainant pursued discretionary appeal to EEOC, with EEOC disposition; or if either agency or EEOC disposition is delayed); *Brown* v. *GSA*, 425 U. S. 820, 833 (1976) (discussing § 717's "rigorous administrative exhaustion requirements"); see also 29 CFR § 1614.105(a) (1998) (requiring complainant initially to notify agency and make effort to resolve matter informally); § 1614.106(d)(2) (requiring agency investigation prior to EEOC consideration).

To deny that an EEOC compensatory damages award is, statutorily speaking, "appropriate" would undermine this remedial scheme. It would force into court matters that the EEOC might otherwise have resolved. And by preventing earlier resolution of a dispute, it would increase the burdens of both time and expense that accompany efforts to resolve hundreds, if not thousands, of such disputes each year. See Equal Employment Opportunity Commission, Federal Sector Report on EEO Complaints Processing and Appeals by Federal Agencies for Fiscal Year 1997, pp. 19, 61 (1998) (28,947 Federal Government employment discrimination claims filed in 1997; 7,112 claims appealed to EEOC); Reply Brief for Petitioner 12–13, n. 9 (estimating "hundreds" of cases each year that involve claims for compensatory damages).

The history of the CDA reinforces this point. The CDA's sponsors and supporters spoke frequently of the need to create a new remedy in order, for example, to "help make victims whole." H. R. Rep. No. 102–40, pt. 1, pp. 64–65 (1991); see also Civil Rights Act of 1991, § 2, 105 Stat. 1071, 42 U. S. C. § 1981 note (congressional finding that "additional remedies under Federal law are needed to deter . . . intentional discrimination in the workplace"); *id.*, § 3 (one purpose

of Act is "to provide appropriate remedies for intentional discrimination . . . in the workplace"); 137 Cong. Rec. 28636–28638, 28663–28667, 28676–28680 (1991) (introduction and discussion of Danforth/Kennedy Amendment No. 1274, in relevant part permitting recovery of compensatory damages); *id.*, at 28880–28881 (statements of Sen. Warner and Sen. Kennedy) (clarifying that Danforth/Kennedy amendment covers federal employees and suggesting amendment to this effect). But the CDA's sponsors and supporters said nothing about limiting the EEOC's ability to use the new Title VII remedy or suggesting that it would be desirable to distinguish the new Title VII remedy from old Title VII remedies in that respect. This total silence is not surprising. What reason could there be for Congress, anxious to have the EEOC consider as a preliminary matter every other possible remedy, not to want the EEOC similarly to consider compensatory damages as well?

Respondent makes three important arguments in favor of a more limited interpretation of the statutes—an interpretation that would deprive the EEOC of the power to award compensatory damages. First, respondent points out that the CDA says nothing about the EEOC, or EEOC proceedings, but rather states only that a complaining party may recover compensatory damages "in *an action* brought under section . . . 717." 42 U. S. C. § 1981a(a)(1) (emphasis added). And the word "action" often refers to judicial cases, not to administrative "proceedings." See *New York Gaslight Club, Inc.* v. *Carey,* 447 U. S. 54, 60–62 (1980) (distinguishing civil "actions" from administrative "proceedings").

Had Congress thought it important so to limit the scope of the CDA, however, it could easily have cross-referenced § 717(c), the civil action subsection itself, rather than cross-referencing the whole of § 717, which includes authorization for the EEOC to enforce the section through "appropriate remedies." Regardless, the question, as we see it, is

whether, by using the word "action," Congress intended to deny that compensatory damages is *"appropriate"* administrative relief within the terms of § 717(b). In light of the previous discussion, see *supra*, at 217–220, we do not believe the simple use of the word "action" in the context of a cross-reference to the whole of § 717 indicates an intent to deprive the EEOC of that authority.

Second, in an effort to explain why Congress might have wanted to impose a special EEOC-related limitation in respect to compensatory damages, respondent points to the language in the CDA that says: "If a complaining party seeks compensatory . . . damages under this section . . . *any party* may demand a trial by jury." 42 U. S. C. § 1981a(c) (emphasis added). Respondent notes that an EEOC compensatory damages award would not involve a jury. And an agency cannot proceed to court under § 717(c) because that subsection makes a court action available only to an aggrieved complaining party, not to the agency. § 2000e–16(c). Thus, respondent concludes that the CDA must implicitly forbid any such EEOC award, for that award would take place without the jury trial that § 1981a(c) guarantees.

This argument, however, draws too much from too little. One easily can read the jury trial provision in § 1981a(c) as simply guaranteeing either party a jury trial in respect to compensatory damages *if* a complaining party proceeds to court under § 717(c). The words "under this section" in § 1981a(c) support that interpretation, for "this section," § 1981a, refers primarily to court proceedings. And there is no reason to believe Congress intended more. The history of the jury trial provision suggests that Congress saw the provision primarily as a benefit to complaining parties, not to the Government. See, *e. g.,* 137 Cong. Rec., at 29051–29052 (statement of Sen. Leahy) (for "the first time, women and the disabled could recover damages and have jury trials for claims of intentional discrimination"); *id.,* at 30668 (state-

ment of Rep. Ford) (provision will "provid[e] all victims of intentional discrimination a right to trial by jury"); see also, *e. g., id.,* at 29053–29054 (statement of Sen. Wallop) (discussing "economically devastating lawsuits"); *id.,* at 29041 (statement of Sen. Bumpers) (relating fears about "runaway jur[ies]"). The fact that Congress permits an employee to file a complaint in court, but forbids the agency to challenge an adverse EEOC decision in court, also suggests that Congress was not inordinately and unusually concerned with invoking special judicial safeguards to protect the Government.

Finally, respondent argues that insofar as the law permits the EEOC to award compensatory damages, it waives the Government's sovereign immunity, and we must construe any such waiver narrowly. See *Lane* v. *Peña,* 518 U. S. 187, 192 (1996); *Lehman* v. *Nakshian,* 453 U. S. 156, 160–161 (1981). There is no dispute, however, that the CDA waives sovereign immunity in respect to an award of compensatory damages. Whether, in light of that waiver, the CDA permits the EEOC to consider the same matter at an earlier phase of the employment discrimination claim is a distinct question concerning how the waived damages remedy is to be administered. Because the relationship of this kind of administrative question to the goals and purposes of the doctrine of sovereign immunity may be unclear, ordinary sovereign immunity presumptions may not apply. In the Secretary's view here, for example, the EEOC's preliminary consideration, by lowering the costs of resolving disputes, does not threaten, but helps to protect, the public fisc. Regardless, if we must apply a specially strict standard in such a case, which question we need not decide, that standard is met here. We believe that the statutory language, taken together with statutory purposes, history, and the absence of any convincing reason for denying the EEOC the relevant power, produce evidence of a waiver that satisfies the stricter standard.

For these reasons, we conclude that the EEOC possesses the legal authority to enforce § 717 through an award of compensatory damages.

## III

Respondent asks us to affirm on alternative grounds the Seventh Circuit's judgment permitting his case to proceed in the District Court. The Seventh Circuit considered whether Gibson had "asked the EEOC for compensatory damages." 137 F. 3d, at 994. It added that if "he did, then the government's failure-to-exhaust argument obviously is a non-starter." *Ibid.* But the Court of Appeals concluded that Gibson did not "put the EEOC on notice that he was seeking compensatory damages." *Ibid.* Respondent claims that he can proceed in District Court because he did satisfy the law's exhaustion requirements, even if the EEOC has the legal power to award compensatory damages and even if he did not give notice to the EEOC that he sought compensatory damages. He argues that is so because (1) the requirement of notice for exhaustion purposes is unusually weak in respect to compensatory damages, (2) he did request a "monetary cash award," and (3) special circumstances estop the Government from asserting a "no exhaustion" claim in this case.

These matters fall outside the scope of the question presented in the Government's petition for certiorari. See *Roberts* v. *Galen of Va., Inc.*, 525 U. S. 249, 253–254 (1999) *(per curiam).* We remand the case so that the Court of Appeals can determine whether these questions have been properly raised and, if so, decide them.

\* \* \*

The judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

224

JUSTICE KENNEDY, with whom THE CHIEF JUSTICE, JUSTICE SCALIA, and JUSTICE THOMAS join, dissenting.

The rules governing this case are clear and well established, or at least had been before the majority's unsettling opinion today. Relief may not be awarded against the United States unless it has waived its sovereign immunity. See *Department of Army* v. *Blue Fox, Inc.*, 525 U. S. 255 (1999). The waiver must be expressed in unequivocal statutory text and cannot be implied. *Id.*, at 261; *Lane* v. *Peña*, 518 U. S. 187, 192 (1996). Even when the United States has waived its immunity, the waiver must be "strictly construed, in terms of its scope, in favor of the sovereign," *Blue Fox, supra*, at 261; accord, *Lane, supra*, at 192, for " 'this Court has long decided that limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied,' " *Lehman* v. *Nakshian*, 453 U. S. 156, 161 (1981), quoting *Soriano* v. *United States*, 352 U. S. 270, 276 (1957). Not only do these rules reserve authority over the public fisc to the branch of Government with which the Constitution has placed it, they also form an important part of the background of settled legal principles upon which Congress relied in enacting various statutes authorizing suits against the United States, such as the Tucker Act, 28 U. S. C. § 1491; § 10(a) of the Administrative Procedure Act, 5 U. S. C. § 702; and the Federal Tort Claims Act, 28 U. S. C. § 2671 *et seq.* The rules governing waivers of sovereign immunity make clear that the Equal Employment Opportunity Commission (EEOC) may not award or authorize compensatory damages against the United States unless it is permitted to do so by a statutory provision which waives the United States' immunity to the awards in clear and unambiguous terms.

Section 717(b) of Title VII of the Civil Rights Act of 1964, 42 U. S. C. § 2000e–16(b), which authorizes the EEOC to enforce federal compliance with Title VII "through appropriate remedies, including reinstatement or hiring of employees

with or without back pay," effects a waiver of the United States' sovereign immunity for some purposes. Unlike other similar statutes, however, the provision does not mention awards of compensatory damages. Compare § 717(b) with 2 U. S. C. §§ 1311(b)(1)(B), 1405(g) (1994 ed., Supp. III). A waiver of immunity to other types of relief does not provide the unequivocal statement required to establish a waiver of immunity to damages awards. See *United States* v. *Nordic Village, Inc.*, 503 U. S. 30, 34 (1992) ("Though [11 U. S. C. § 106(c)], too, waives sovereign immunity, it fails to establish unambiguously that the waiver extends to monetary claims"); *Lane, supra,* at 192.

Nor does the statutory grant of authority to the EEOC to enforce Title VII through appropriate remedies include, in unequivocal terms or even by necessary implication, the power to award or authorize compensatory damages. Even if the phrase "appropriate remedies" had been intended, as the majority maintains, to incorporate relief authorized for violations of Title VII under other statutory provisions, it is not obvious that the phrase's meaning would have been intended also to "expand" to include remedies that were not available at the time § 717 was adopted. *Ante,* at 218.

It is far from clear, moreover, that the phrase was intended to incorporate other statutory provisions at all. Unlike other subsections of § 717, see § 717(d) (incorporating various provisions relating to judicial actions), § 717(b) does not make an explicit reference to other statutory provisions. In addition, the specific examples given by the statute of appropriate remedies—reinstatement or hiring of employees with or without backpay—are equitable in nature. See *United States* v. *Burke,* 504 U. S. 229, 238 (1992). The interpretive canons of *noscitur a sociis* and *ejusdem generis* suggest the appropriate remedies authorized by § 717(b) are remedies of the same nature as reinstatement, hiring, and backpay—*i. e.,* equitable remedies. The phrase "appropriate remedies," furthermore, connotes the remedial discre-

tion which is the hallmark of equity. A plausible, and perhaps even the best, interpretation of § 717(b), then, is that it grants administrative authority to determine which of the traditional forms of equitable relief are appropriate in any given case of discrimination. Whether or not this is the better reading, it should suffice to establish beyond dispute that the statute does not authorize awards of compensatory damages in express and unequivocal terms. As a consequence, § 717(b) cannot provide the required waiver of the United States' sovereign immunity.

Unlike § 717(b), 42 U. S. C. § 1981a does authorize awards of compensatory damages against the United States. Although it is clear the statute authorizes courts to award damages, however, § 1981a does not so much as mention the EEOC, much less empower it to award or authorize money damages. It is settled law that a waiver of sovereign immunity in one forum does not effect a waiver in other forums. See, *e. g., McElrath* v. *United States,* 102 U. S. 426, 440 (1880) ("[The Government] can declare in what court it may be sued, and prescribe the forms of pleading and the rules of practice to be observed in such suits"); *Great Northern Life Ins. Co.* v. *Read,* 322 U. S. 47, 54, n. 6 (1944) ("The Federal Government's consent to suit against itself, without more, in a field of federal power does not authorize a suit in a state court"); *Case* v. *Terrell,* 11 Wall. 199, 201 (1871) (The United States' consent to suit in the Court of Claims does not extend to other federal courts).

The majority's attempt to read 42 U. S. C. § 1981a(a)(1) to authorize administrative awards of compensatory damages is not persuasive. Section 1981a(a)(1) provides:

"In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 . . . the complaining party may recover compensatory and punitive damages as allowed in subsection (b) of this section, in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964 . . . ."

The provision authorizes an award of compensatory damages in an "action" brought under § 717; the word "action" is often used to distinguish judicial cases from administrative "proceedings." See *New York Gaslight Club, Inc.* v. *Carey*, 447 U. S. 54, 60–62 (1980). Unlike § 717(b), which authorizes administrative proceedings, § 717(c) authorizes "civil action[s]" in court. It is most natural, therefore, to understand the phrase "an action brought by a complaining party under section . . . 717" as a reference to a judicial action under § 717(c) but not to an administrative proceeding under § 717(b). Compensatory awards are authorized under § 1981a(a)(1), moreover, "in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964." Section 706(g) authorizes a "court" to grant equitable relief for violations of Title VII. This provision, as incorporated through § 717(d), applies only in "civil actions" brought under § 717(c); it does not apply in proceedings before the EEOC or any other agency. Section 1981a(a)(1)'s express reference to § 706(g) confirms that compensatory damages are available only in judicial actions.

Other provisions of § 1981a also make clear that the statute authorizes compensatory damages only in judicial actions. Section 1981a(c) provides that "[i]f a complaining party seeks compensatory . . . damages under this section—(1) any party may demand a trial by jury; and (2) the court shall not inform the jury of the limitations [on damages awards] described in subsection (b)(3) of this section." It cannot be disputed that this provision contemplates a jury trial overseen by a court. With due respect to the majority, the provision does not guarantee a jury trial to either party "*if* a complaining party proceeds to court under § 717(c)," *ante*, at 221; it provides that either party may obtain a jury trial "[i]f a complaining party seeks compensatory . . . damages," § 1981a(c).

While falling short of embracing the argument as its own, the majority flirts with the contention that allowing agencies rather than juries to award compensatory damages lowers

the costs of resolving employment disputes and protects the public fisc. It is not clear to me that juries would be less protective of the fisc than would one group of Government employees who deem themselves empowered by agency interpretation to award Government funds to fellow employees. When a Government employee seeks damages from the Government itself, there may be advantages in insisting upon the expertise of a trial court with experience in awarding damages in all types of cases, with the additional safeguards of trial in a forum of high visibility, trial by jury if either party chooses to ask for it, and appellate review. These factors are disregarded by the majority, which seems instead to suggest that the nature and convenience of administrative proceedings will by necessity provide a financial advantage to the Government.

In all events, speculation does not suffice to overcome the rule that waivers of sovereign immunity must be clear and express. An unequivocal waiver of the United States' sovereign immunity to administrative awards of compensatory damages cannot be found in the relevant statutory provisions. To the extent the majority relies on textual analysis, it establishes at most (if at all) that the statutes might be read to authorize such awards, not that the statutes must be so read. To the extent the majority relies on legislative history and other extratextual sources, it contradicts our precedents and sets us on a new course, for before today it was well settled that "[a] statute's legislative history cannot supply a waiver that does not appear clearly in any statutory text." *Lane*, 518 U. S., at 192; accord, *Nordic Village*, 503 U. S., at 37 ("[T]he 'unequivocal expression' of elimination of sovereign immunity that we insist upon is an expression in statutory text. If clarity does not exist there, it cannot be supplied by a committee report"). With respect, I dissent.