# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued February 3, 2006        Decided March 28, 2006

No. 05-5031

RANDY WEBMAN AND
LARRY ROZEN,
APPELLANTS

v.

FEDERAL BUREAU OF PRISONS, ET AL.,
APPELLEES

---

Appeal from the United States District Court
for the District of Columbia
(No. 03cv00172)

---

*Lee Boothby* argued the cause and filed the briefs for appellants.

*Heather Graham-Oliver*, Assistant U.S. Attorney, argued the cause for appellees. With her on the brief were *Kenneth L. Wainstein*, U.S. Attorney, and *Michael J. Ryan*, Assistant U.S. Attorney. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: SENTELLE, HENDERSON and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SENTELLE.

Concurring opinion filed by *Circuit Judge* TATEL.

SENTELLE, *Circuit Judge*: Appellants, former inmates of the Federal Bureau of Prisons, sued the Bureau and several of its personnel (collectively, "BOP"), alleging religion-based discrimination in violation of the Religious Freedom Restoration Act of 1993 ("RFRA"), Pub. L. No. 103-141, 107 Stat. 1488, 42 U.S.C. §§ 2000bb to 2000bb-4. The District Court dismissed their damages claims as barred by sovereign immunity, and plaintiffs brought this appeal. Agreeing that RFRA does not provide the kind of clear and unequivocal waiver of sovereign immunity governing precedent requires, we affirm.

## I. Background

Randy Webman and Larry Rozen were imprisoned for fraud and other offenses at the Federal Correctional Complex in Coleman, Florida. Rozen was released in 2001, Webman in 2004. On February 3, 2003, they filed a complaint in the United States District Court for the District of Columbia, alleging violations of RFRA and the First Amendment's Free Exercise clause.

According to their complaint, Webman and Rozen "are practicing Jews who adhere to the religious obligations and dietary laws of their faith." While imprisoned, they allegedly suffered an array of religion-based discrimination. *Inter alia*, the BOP allegedly denied Webman and Rozen access to rabbis, served them non-kosher meals, refused to afford them an opportunity to pray regularly, and countenanced or caused sundry forms of religious harassment. The complaint sought injunctive relief, compensatory damages, and reasonable costs and attorney's fees.

BOP responded to the complaint with a motion to dismiss, styled in the alternative as a motion for summary judgment. On March 21, 2004, the District Court granted the motion in part. It dismissed all damages claims as barred by sovereign immunity, and Rozen's claims for injunctive relief because his release from prison mooted them. Webman remained incarcerated, however, and the court held that his equitable claims raised genuine issues of material fact. These remaining claims were short-lived, though: Soon after Webman was released from prison in September 2004, the court found them moot as well. Webman and Rozen now appeal only the District Court's judgment on the damages claim, arguing that the court erred in its ruling on sovereign immunity under RFRA.

## II. Analysis

### A. RFRA

In *Employment Division v. Smith*, 494 U.S. 872 (1990), the Supreme Court held that "neutral, generally applicable laws may be applied to religious practices even when not supported by a compelling government interest." *City of Boerne v. Flores*, 521 U.S. 507, 514 (1997). In so doing, the *Smith* Court held that the so-called *Sherbert* test does not govern such neutral, generally applicable laws. That test, set forth in *Sherbert v. Verner*, 374 U.S. 398 (1963), involved a balancing process in which the court would ask whether a statutory or regulatory prohibition "substantially burdened a religious practice and, if it did, whether the burden was justified by a compelling government interest." *City of Boerne*, 521 U.S. at 513.

After the *Smith* decision, Congress enacted RFRA for the express purpose of restoring the *Sherbert* Free Exercise test. *See* 42 U.S.C. § 2000bb(b)(1); *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 2006 WL 386374, at *4 (U.S.

Feb. 21, 2006). Under RFRA, "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability," unless the government can demonstrate that the application of the burden "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(a), (b).

RFRA's judicial relief provision is couched in broad terms: "A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain *appropriate relief against a government*." *Id.* § 2000bb-1(c) (emphasis added). In its definition section, RFRA states: "[T]he term 'government' includes a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States . . . ." *Id.* § 2000bb-2(1).

The Supreme Court ruled in *City of Boerne* that Congress lacks the constitutional authority to enforce RFRA against the states. 521 U.S. at 536. Congress does, however, have the power to enforce RFRA against the federal government. *See Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 167 (D.C. Cir. 2003) ("[W]e have held that without doubt 'the portion [of RFRA] applicable to the federal government . . . survived the Supreme Court's decision striking down the statute as applied to the States.'") (quoting *Henderson v. Kennedy*, 265 F.3d 1072, 1073 (D.C. Cir. 2001)), *cert. denied*, 540 U.S. 1218 (2004).

## B. Sovereign Immunity

"It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463

U.S. 206, 212 (1983); *see also United States v. Sherwood*, 312 U.S. 584, 586 (1941) ("The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain suit.") (citations omitted). The federal government may waive its sovereign immunity by statute, but that waiver "must be unequivocally expressed in statutory text." *Lane v. Peña*, 518 U.S. 187, 192 (1996) (citing *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34, 37 (1992)); *see also United States v. Mitchell*, 445 U.S. 535, 538 (1980); *United States v. King*, 395 U.S. 1, 4 (1969). Waivers may not be implied. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990); *Soriano v. United States*, 352 U.S. 270, 276 (1957). And courts must "strictly construe[]" any waiver of sovereign immunity, "in terms of its scope, in favor of the sovereign." *Lane*, 518 U.S. at 192 ("To sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such monetary claims.") (citation omitted); *Library of Cong. v. Shaw*, 478 U.S. 310, 318 (1986); *Lehman v. Nakshian*, 453 U.S. 156, 161 (1981); *McMahon v. United States*, 342 U.S. 25, 27 (1951); *Sherwood*, 312 U.S. at 590 (collecting cases).

### C. Application to this Case

Webman and Rozen do not dispute that the BOP is protected by sovereign immunity and therefore immune to suit absent a waiver. Thus, the only issue before us is whether RFRA's waiver of sovereign immunity extends to monetary damages.[1] We review the matter de novo. *Loughlin v. United*

---

[1]BOP's brief—in addition to offering little beyond conclusory assertions that RFRA did not waive sovereign immunity—lifts almost an entire paragraph from *Tinsley v. Pittari*, 952 F. Supp. 384, 389 (N.D. Tex. 1996), reproducing it *twice* (with only minor alterations)

*States*, 393 F.3d 155, 162 (D.C. Cir. 2004).

Appellants attempt to find an unequivocal waiver in RFRA's reference to "government." Appellants' Br. at 12-13. Because RFRA authorizes "appropriate relief against a *government*," 42 U.S.C. § 2000bb-1(c) (italics added), and "government" includes instrumentalities of the federal government, *id.* § 2000bb-2(1), Webman and Rozen claim that RFRA waives the federal government's sovereign immunity in its entirety. Not so. No one disputes that BOP and other arms of the federal government may be sued for at least *some* forms of relief under RFRA. The question is whether permissible forms include money damages. A waiver of sovereign immunity for some type of remedy does not necessarily extend to suits for damages. *See Lane*, 518 U.S. at 196 ("It is plain that Congress is free to waive the Federal Government's sovereign immunity against liability without waiving its immunity from monetary damages awards."); *Nordic Village*, 503 U.S. at 34 ("Though [a bankruptcy statute], too, waives sovereign immunity, it fails to establish unambiguously that the waiver extends to monetary claims.").

The dispositive question is whether RFRA's reference to "appropriate relief" includes monetary damages. On its face, RFRA's reference to "appropriate relief" is not the "sort of unequivocal waiver that our precedents demand," *Lane*, 518 U.S. at 198, because that broad term is susceptible to more than one interpretation. In some contexts, "appropriate relief" might include damages. *Cf. West v. Gibson*, 527 U.S. 212, 222-23 (1999) (holding that Title VII's reference to "appropriate remedies" contemplates compensatory damages where a statutory cross-reference explicitly authorizes them). However,

in its brief, without attribution, in violation of Fed. R. App. P. 28(a)(9)(A) and D.C. Cir. R. 28(d). *See* Appellee's Br. at 7, 10.

another plausible reading is that "appropriate relief" covers equitable relief but not damages, given Congress's awareness of the importance of sovereign immunity and its silence in the statute on the subject of damages. We cannot find an unambiguous waiver in language this open-ended and equivocal.

Congress need not use magic words to waive sovereign immunity, but the language it chooses must be unequivocal and unambiguous. *See Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999). RFRA's text falls short on this standard.[2] We therefore hold that RFRA does not waive the federal government's sovereign immunity for damages.

### III. Conclusion

For the reasons stated above, the District Court's dismissal of Appellants' claims for lack of jurisdiction is therefore

*Affirmed.*

---

[2]While no appellate courts have squarely addressed the issue before us, at least five district courts have concluded that RFRA's textual reference to "appropriate relief" is not an unequivocal waiver of sovereign immunity for damages. *See Lepp v. Gonzales*, 2005 WL 1867723, at *8 (N.D. Cal. Aug. 2, 2005); *Pineda-Morales v. De Rosa*, 2005 WL 1607276, at *13 (D.N.J. July 6, 2005); *Jama v. INS*, 343 F. Supp. 2d 338, 372-73 (D.N.J. 2004); *Tinsley*, 952 F. Supp. at 389; *Meyer v. Fed. Bureau of Prisons*, 929 F. Supp. 10, 13-14 (D.D.C. 1996); *cf. Commack Self-Serv. Kosher Meats Inc. v. New York*, 954 F. Supp. 65, 68-70 (E.D.N.Y. 1997); *Rust v. Clarke*, 851 F. Supp. 377, 380-81 (D. Neb. 1994); *see also Mack v. O'Leary*, 80 F.3d 1175, 1177 (7th Cir. 1996) (dictum) (referencing the "appropriate relief" language and mentioning that "there is no indication of congressional intent to abrogate the states' Eleventh Amendment immunity from suit"), *vacated sub nom. O'Leary v. Mack*, 522 U.S. 801 (1997).

TATEL, *Circuit Judge*, concurring: Although I concur in the court's opinion, I write separately to explain why, even though "[i]n some contexts, 'appropriate relief' might include damages," majority op. at 6, it does not when used in RFRA.

Of course, as the court points out, a critical factor in our declining to read "appropriate relief" to include damages is our obligation to construe waivers of sovereign immunity strictly, and therefore to require Congress to authorize damages unequivocally. *See id.* at 5. Thus, although appellants rightly point out that the term "appropriate relief" ordinarily "confers broad discretion on the Court" to fashion a remedy, *Sch. Comm. of the Town of Burlington, Mass. v. Dep't of Educ.*, 471 U.S. 359, 369 (1985), such sweeping statements have no applicability in the sovereign immunity context.

Turning to the statute before us, I believe that we cannot rest on the general proposition that "appropriate relief" is "susceptible to more than one interpretation." Majority op. at 6. Instead, because "Congress need not use magic words to waive sovereign immunity," *id.* at 7, we must determine whether the term "appropriate relief" as used in *this statute* unequivocally includes damages. In my view, it would if either (1) damages would constitute the only appropriate remedy for the particular harm at which the statute is aimed, or (2) Congress elsewhere made clear that it considered damages to be the appropriate remedy. Because RFRA falls into neither category, I agree that its sovereign immunity waiver must be limited to equitable relief.

To understand the first category, consider the following hypothetical statute: "If a government official hits a person over the head with a baseball bat, that person may file suit and obtain appropriate relief against the government." Interpreting such a statute to authorize only equitable relief would make little sense: what equitable relief could possibly remedy such a one-time injury? It thus makes no difference that the hypothetical statute

does not expressly authorize damages, for the type of injury the statute addresses makes clear that damages are "appropriate."

RFRA violations, in contrast, will often be ongoing, making injunctive relief "appropriate." For example, in this case appellants originally sought an injunction requiring the prison to accommodate their religious needs by revising the menu and implementing a training and monitoring program for prison staff. *See also Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, __ S. Ct. ___, 2006 WL 386374 (U.S. Feb. 21, 2006) (affirming grant of preliminary injunction under RFRA for religious sect seeking to block enforcement of ban on use of sacramental tea). The district court dismissed appellants' claims for injunctive relief only because those claims became moot when appellants were released from prison. *Webman v. Fed. Bureau of Prisons*, No. 03-172, slip op. at 11 (D.D.C. Mar. 21, 2004) (dismissing appellant Rozen's claims as moot because he was no longer incarcerated); *Webman v. Fed. Bureau of Prisons*, No. 03-172, slip op. at 6-9 (D.D.C. Jan. 4, 2005) (dismissing appellant Webman's claims for same reason). Accordingly, I see no indication that RFRA violations will ordinarily lend themselves to monetary relief.

The Supreme Court invoked a version of the second category referred to above in *West v. Gibson*, 527 U.S. 212 (1999). There, the Court considered the Equal Employment Opportunity Commission's authority to enforce Title VII of the Civil Rights Act of 1964 against the federal government. Enacted in 1972, the relevant provision authorized the EEOC to enforce the prohibition on discrimination by the federal government "through appropriate remedies, including reinstatement or hiring of employees with or without back pay, as will effectuate the policies of this section." 42 U.S.C. § 2000e-16(b), *quoted in West*, 527 U.S. at 215. In 1991, Congress amended Title VII to authorize awards of

compensatory damages in certain circumstances against both private parties and the government. Civil Rights Act of 1991, Pub. L. No. 102-166, § 102, 105 Stat. 1071, 1072 (codified at 42 U.S.C. § 1981a). Although the 1991 amendment, the relevant portion of which the Supreme Court labeled the "Compensatory Damages Amendment (CDA)," *West*, 527 U.S. at 215, made clear that courts could award compensatory damages, it made no change to the provision authorizing the EEOC to enforce the statute through "appropriate remedies."

In *West*, the Supreme Court held that the EEOC had authority to award compensatory damages against the government. "After enactment of the 1991 CDA," the Court reasoned, "an award of compensatory damages is a 'remedy' that is 'appropriate.'" *Id.* at 217. Recognizing that "ordinary sovereign immunity presumptions may not apply" because Congress made clear that courts (as distinguished from the EEOC) could award damages, the Court nonetheless held that "if we must apply a specially strict standard . . . , that standard is met here." *Id.* at 222. The Court went on to explain that "the statutory language, taken together with statutory purposes, history, and the absence of any convincing reason for denying the EEOC the relevant power, produce evidence of a waiver that satisfies the stricter standard." *Id.* Again, although Title VII contained no express authorization of damage awards, the context made Congress's intent apparent.

Unlike Title VII, RFRA nowhere makes clear that damages are "appropriate" (at least when awarded against the government, *cf.* 42 U.S.C. § 2000bb-2 (including government officials as well as the government itself in the term "government")). Indeed, RFRA's quite limited purpose suggests the contrary. Congress passed RFRA to provide the claims and defenses that the Supreme Court held in *Employment Division, Department of Human Resources v. Smith*, 494 U.S.

4

872 (1990), were unavailable under the First Amendment's Free Exercise Clause. *See* 42 U.S.C. § 2000bb(b) (describing RFRA's purposes as "to restore the compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S. 398 (1963) and *Wisconsin v. Yoder*, 406 U.S. 205 (1972) and to guarantee its application in all cases where free exercise of religion is substantially burdened" and "to provide a claim or defense to persons whose religious exercise is substantially burdened by government"). Appellants point to no pre-*Smith* waiver of sovereign immunity that authorized damages against the government in Free Exercise cases, nor am I aware of one. Because Congress enacted RFRA to return to a pre-*Smith* world, a world in which damages were unavailable against the government, "appropriate relief" is most naturally read to exclude damages against the government. Thus, unlike Title VII's purpose, RFRA's purpose does not "produce evidence of a waiver" of sovereign immunity for damages claims, *West*, 527 U.S. at 222, much less evidence unequivocal enough to satisfy the strict standard for waivers of sovereign immunity.