TATEL, Circuit Judge,
concurring.
Although I concur in the court’s opinion, I write separately to explain why, even though “[i]n some contexts, ‘appropriate relief might include damages,” majority op. at 1026, it does not when used in RFRA.
Of course, as the court points out, a critical factor in our declining to read “appropriate relief’ to include damages is our obligation to construe waivers of sovereign immunity strictly, and therefore to require Congress to authorize damages unequivocally. See id. at 1025. Thus, although appellants rightly point out that the term “appropriate relief’ ordinarily “confers broad discretion on the Court” to fashion a remedy, Sch. Comm, of the Town of Burlington, Mass. v. Dep’t of Educ., 471 U.S. 359, 369, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985), such sweeping statements have no applicability in the sovereign immunity context.
Turning to the statute before us, I believe that we cannot rest on the general proposition that “appropriate relief’ is “susceptible to more than one interpreta *1027 tion.” Majority op. at 1026. Instead, because “Congress need not use magic words to waive sovereign immunity,” id., we must determine whether the term “appropriate relief’ as used in this statute unequivocally includes damages. In my view, it would if either (1) damages would constitute the only appropriate remedy for the particular harm at which the statute is aimed, or (2) Congress elsewhere made clear that it considered damages to be the appropriate remedy. Because RFRA falls into neither category, I agree that its sovereign immunity waiver must be limited to equitable relief.
To understand the first category, consider the following hypothetical statute: “If a government official hits a person over the head with a baseball bat, that person may file suit and obtain appropriate relief against the government.” Interpreting such a statute to authorize only equitable relief would make little sense: what equitable relief could possibly remedy such a one-time injury? It thus makes no difference that the hypothetical statute does not expressly authorize damages, for the type of injury the statute addresses makes clear that damages are “appropriate.”
RFRA violations, in contrast, will often be ongoing, making injunctive relief “appropriate.” For example, in this case appellants originally sought an injunction requiring the prison to accommodate their religious needs by revising the menu and implementing a training and monitoring program for prison staff. See also Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal, — U.S. -, 126 S.Ct. 1211, 163 L.Ed.2d 1017 (2006) (affirming grant of preliminary injunction under RFRA for religious sect seeking to block enforcement of ban on use of sacramental tea). The district court dismissed appellants’ claims for injunctive relief only because those claims became moot when appellants were released from prison. Webman v. Fed. Bureau of Prisons, No. 03-172, slip op. at 11 (D.D.C. Mar. 21, 2004) (dismissing appellant Rozen’s claims as moot because he was no longer incarcerated); Webman v. Fed. Bureau of Prisons, No. 03-172, slip op. at 6-9 (D.D.C. Jan. 4, 2005) (dismissing appellant Webman’s claims for same reason). Accordingly, I see no indication that RFRA violations will ordinarily lend themselves to monetary relief.
The Supreme Court invoked a version of the second category referred to above in West v. Gibson, 527 U.S. 212, 119 S.Ct. 1906, 144 L.Ed.2d 196 (1999). There, the Court considered the Equal Employment Opportunity Commission’s authority to enforce Title VII of the Civil Rights Act of 1964 against the federal government. Enacted in 1972, the relevant provision authorized the EEOC to enforce the prohibition on discrimination by the federal government “through appropriate remedies, including reinstatement or hiring of employees with or without back pay, as will effectuate the policies of this section.” 42 U.S.C. § 2000e-16(b), quoted in West, 527 U.S. at 215, 119 S.Ct. 1906. In 1991, Congress amended Title VII to authorize awards of compensatory damages in certain circumstances against both private parties and the government. Civil Rights Act of 1991, Pub.L. No. 102-166, § 102, 105 Stat. 1071, 1072 (codified at 42 U.S.C. § 1981a). Although the 1991 amendment, the relevant portion of which the Supreme Court labeled the “Compensatory Damages Amendment (CDA),” West, 527 U.S. at 215, 119 S.Ct. 1906, made clear that courts could award compensatory damages, it made no change to the provision authorizing the EEOC to enforce the statute through “appropriate remedies.”
In West, the Supreme Court held that the EEOC had authority to award compensatory damages against the government. “After enactment of the 1991 *1028 CDA,” the Court reasoned, “an award of compensatory damages is a ‘remedy’ that is ‘appropriate.’ ” Id. at 217, 119 S.Ct. 1906. Recognizing that “ordinary sovereign immunity presumptions may not apply” because Congress made clear that courts (as distinguished from the EEOC) could award damages, the Court nonetheless held that “if we must apply a specially strict standard ..., that standard is met here.” Id. at 222, 119 S.Ct. 1906. The Court went on to explain that “the statutory language, taken together with statutory purposes, history, and the absence of any convincing reason for denying the EEOC the relevant power, produce evidence of a waiver that satisfies the stricter standard.” Id. Again, although Title VII contained no express authorization of damage awards, the context made Congress’s intent apparent.
Unlike Title VII, RFRA nowhere makes clear that damages are “appropriate” (at least when awarded against the government, cf. 42 U.S.C. § 2000bb-2 (including government officials as well as the government itself in the term “government”)). Indeed, RFRA’s quite limited purpose suggests the contrary. Congress passed RFRA to provide the claims and defenses that the Supreme Court held in Employment Division, Department of Human Resources v. Smith, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990), were unavailable under the First Amendment’s Free Exercise Clause. See 42 U.S.C. § 2000bb(b) (describing RFRA’s purposes as “to restore the compelling interest test as set forth in Sherbert v. Verner, 374 U.S. 398 (1963) and Wisconsin v. Yoder, 406 U.S. 205 (1972) and to guarantee its application in all cases where free exercise of religion is substantially burdened” and “to provide a claim or defense to persons whose religious exercise is substantially burdened by government”). Appellants point to no pr e-Smith waiver of sovereign immunity that authorized damages against the government in Free Exercise cases, nor am I aware of one. Because Congress enacted RFRA to return to a pr e-Smith world, a world in which damages were unavailable against the government, “appropriate relief’ is most naturally read to exclude damages against the government. Thus, unlike Title VII’s purpose, RFRA’s purpose does not “produce evidence of a waiver” of sovereign immunity for damages claims, West, 527 U.S. at 222, 119 S.Ct. 1906, much less evidence unequivocal enough to satisfy the strict standard for waivers of sovereign immunity.