**Samuel THOMAS, Plaintiff,**

v.

**DIGITAL EQUIPMENT CORPORATION, Defendant.**

**Civ. A. No. 86–2189–Y.**

United States District Court, D. Massachusetts.

Dec. 21, 1988.

---

Michael A. Brown, Grayer, Brown & Dilday, Boston, Mass., for plaintiff.

Richard P. Ward, Philip C. Curtis, Ropes & Gray, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

The defendant, Digital Equipment Corporation ("Digital"), moves this Court to grant it summary judgment against the plaintiff, Samuel Thomas. Thomas has brought a claim alleging racial discrimination pursuant to 42 U.S.C. sec. 2000e *et seq.*

### I. *Background*

The facts, viewed in the light most favorable to the plaintiff, are as follows. Thomas is a native of India and is now a United States citizen. Complaint at para. 14.[1] He worked, at the time herein relevant, as a Procurement Manager (II) at Digital's plant in Woburn, Massachusetts, Complaint at para. 2, and is the only Manager of color at that facility. Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Memorandum") at 4 (unnumbered). During his employment with Digital, Thomas received good performance reviews.[2] Complaint at paras. 3, 19. Thomas' superiors consistently praised his work and gave him uniformly favorable feedback. Deposition of Samual Thomas ("Thomas Dep.") at 30.

In 1984, Digital officials had become aware that morale among the Woburn plant's employees was quite low. Affidavit of Susan Dinga ("Dinga Aff.") at para. 3; Thomas Dep. at Exhibit 3. In response, Digital implemented the Human Resource Management Program (the "Program") and Personnel Business Plan (the "Plan"). Thomas Dep. at Exhibits 3, 4; Dinga Aff. at para. 4; Dinga Aff., Exhibit A. A component of the Program and the Plan was "employee sensing," a technique by which Digital endeavors to determine employee job satisfaction or dissatisfaction. Dinger Aff. at para. 5; Thomas Dep. at 47; Thomas Dep., Exhibit 3 at 26 (unnumbered); Thomas Dep., Exhibit 4 at 2, 5. Susan Dinga, Personnel Manager in Woburn, sensed Thomas' staff in early 1985. Dinga Aff. at para. 8; Complaint at paras. 4–5. Dinga also sensed the employees of at least two other managers, both white males, apparently around the same time. Dinga Aff. at para 8; Plaintiff's Memorandum at 4 (unnumbered).

On or about May 16, 1985, Thomas was called to a meeting with Dinga and Thomas' supervisor, Frank Coursen. Complaint at para. 4. At that meeting Dinga informed Thomas that she had met with 13 of the 23 members of Thomas' staff. *Id.* at para. 5. She then read to Thomas numerous[3] statements those staff members had given her. *Id.;* Plaintiff's Memorandum at 2 (unnumbered). Nearly all the statements were critical of Thomas. Plaintiff's Memorandum at 2 (unnumbered). Both Coursen and Dinga assured Thomas that he was still considered a good performer and that the sensing results would not go into his record. Thomas Dep. at 133. Approximately one week later, Thomas met again with Coursen to discuss the list of statements and complained that the process Dinga had followed in sensing his staff was not fair, not the norm, and racist. Complaint at para. 7. He also met again with Dinga, from whom he learned that positive statements had been made about him, but had not been included in the report given to Coursen and thus not revealed to him at

---

1. The plaintiff has incorporated the factual statements of the Complaint and his motion papers by reference in his Affidavit. Affidavit of Samuel Thomas ("Thomas Aff.") at 1.

2. Thomas was consistently rated "exceeds the job requirements," the second highest of Digital's five evaluation categories. Plaintiff's Memorandum at 1–2 (unnumbered).

3. Thomas asserts that 71 statements were read to him. The Court notes, however, that Attachment A to the Complaint which, Thomas asserts, lists the statements made to him, contains only 57 statements.

the May 16 meeting. *Id.* at paras. 5, 8; Plaintiff's Memorandum at 2 (unnumbered).

Thomas began to notice a difference in his staff's attitude towards himself after these meetings. In addition, other managers at the plant questioned him about his situation. As a result, his ability to perform his job was adversely affected. Complaint at para. 9.

Thomas subsequently met with the Business Manager and the Operations Manager of the Woburn plant, and a third superior— all white males—to complain that the sensing and the manner in which it had been conducted was discriminatory. *Id.* at para. 10; Plaintiff's Memorandum at 2 (unnumbered). He also informed those present that the "cloud" that the process had left over him would destroy his career unless they would officially, openly support him. Complaint at paras. 10, 11; Thomas Aff. at 2. Although those present offered him support in private, no one committed that support to writing. *Id.* at 10.

In late May or early June, Thomas informed Coursen that he would resign. Defendant's Statement of Material Undisputed Facts at 8. Coursen urged Thomas not to resign, stating that Thomas was such a valuable asset that he, Coursen, would not allow him to resign. Thomas Dep. at 142. On June 10, 1985, Thomas tendered his resignation to Coursen. Thomas Dep. at 161; Complaint at para. 11. Coursen appeared to Thomas to be saddened to receive his resignation and urged him to reconsider. Coursen further stated that he would help Thomas find another job with Digital at a different location and opined that Thomas could secure another postion if he wanted one. Thomas Dep. at 152. Thomas apparently declined this offer and ceased working for Digital on July 8, 1985. *Id.*, Exhibit 8.

## II. *Discussion of Law*

Thomas contends that Dinga singled him out to be the target of a sensing technique not employed with respect to any other manager. Dinga, he asserts, solicited his employees' responses to certain statements that she had apparently drafted, rather than conducting what he rather imprecisely terms "an open positive and negative collection of data." Plaintiff's Memorandum at 4 (unnumbered). The ensuing damage to his ability to perform his job, he contends, resulted in his constructive discharge. Assuming, without deciding, that the assertion of such facts is sufficient to state a claim under Title VII, this Court still must grant Digital's motion for summary judgment.

The Supreme Court in *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) established that

the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

*Id.* at 322, 106 S.Ct. at 2552. In particular, *Celotex* makes clear that Fed.R.Civ.P. 56 requires that a party opposing a summary judgment motion "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56[e] ). This Thomas has failed to do.

The gravamen of Thomas' complaint is difficult to discern within the thicket of claims and arguments, some contradictory,[4] that he has raised. At various points in the papers, Thomas asserts that Dinga was wrong to investigate him because his job performance had been highly evaluated and that her racially motivated purpose in doing so was to undermine him. Thomas elsewhere asserts that Dinga's investigative techniques produced a biased and distorted view of his performance. Thomas

---

4. For example, Thomas complains at one point that Dinga's investigation "did not follow the pattern of collecting positive and negative responses that were [sic] used throughout the company at [the] time." Plaintiff's Memorandum at 3 (unnumbered). At another point in the same pleading, he complains that positive statements were, in fact, collected about him, but were not revealed to him. *Id.* at 2 (unnumbered).

further contends that Dinga, when meeting with his staff, solicited racist statements about him by presenting his staff with certain statements to which she sought a response, rather than conducting "an open positive and negative collection of data." Plaintiff's Memorandum at 4 (unnumbered). Thomas also claims that Dinga recorded 71 statements from his staff, all negative, but left out positive statements in her report to Frank Coursen, Thomas' supervisor. Complaint at para. 8; Plaintiff's Memorandum at 2. Thomas contends that these statements were racially motivated in that they focus on personal conduct, activities, appearance, and behavior unrelated to his performance as a manager.

The problem with Thomas' showing is that it completely fails to demonstrate how he was treated differently from other Digital managers. Thomas acknowledges that sensing is a process Digital has utilized with respect to employees other than himself. *See* Thomas Dep. at 122. Thomas fails to demonstrate, however, how other managers have been sensed at Digital, a showing that conceivably might demonstrate he was somehow singled out for disparate treatment. For example, the staff of two fellow managers at the Woburn facility, Norm Robinson and John Plotke, both white males, were sensed at approximately the same time that Thomas' staff was sensed. Dinga Aff. at para. 8; Thomas Dep. at 122; Plaintiff's Memorandum at 4 (unnumbered). For aught that appears, save for Thomas' general and conclusory assertions to the contrary, the staffs of Robinson,[5] Plotke, and other Digital managers were sensed in exactly the same manner as that of Thomas.

This shortcoming vitiates most of Thomas' argument. For example, Digital may sense its managers without respect to their prior evaluations, especially in a facility like Woburn where employee dissatisfaction is evident and in fact had led to the creation of a rather elaborate Personnel Department response in the form of the Program and the Plan.[6] A genuine issue of material fact, similarly, has not been raised with respect to Dinga's "sensing" techniques because, for aught that appears, they are identical to, or no less benign than, the procedures employed in sensing other staffs.[7] For the same reason, Dinga's report to Coursen and Thomas, which deleted the positive comments about Thomas, raises no genuine issue. As for the allegation that the statements elicited were racially motivated, a review of them reveals that only one is even arguably racist.[8] The remaining statements properly discuss Thomas' attributes as a manager, focusing primarily and appropriately on his management and leadership style, and the work environment under him. *See* Complaint, Attachment A. As these asserted "genuine issues" collapse upon close inspection, so too does any basis for the general assertion that Dinga's investigation was a racially motivated campaign to "get" Thomas. Moreover, with the collapse of these allegations, there can be no argument that Thomas' supervisors had a legal duty to do more for him than they did.

It is boilerplate, in disparate treatment cases, that the absence of any showing that the plaintiff was treated differently from similarly situated employees requires a finding for the defendant. This Court recognizes the appropriate caution that it must exercise in granting summary judgment in an employment discrimination case

5. For reasons never made clear, Thomas attempts to distinguish his case from that of Robinson on the basis that Thomas supervised 23 employees, and Robinson only 3 or 4. Plaintiff's Memorandum at 4 (unnumbered). The distinction appears to be one without a difference.

6. One also wonders whether Thomas' previous evaluations considered, as part of their criteria, the happiness of those working under him.

7. The parties do not seem to dispute that sensing is conducted in a variety of ways at Digital. *E.g.,* Dinga Aff. at para. 6; Thomas Aff. at 1.

8. That statement is as follows: "[Thomas] constantly brings up the fact that he's Indian—different." *See* Complaint, Appendix at 2 (unnumbered). There is no evidence, moreover, that this statement originated with Dinga in any way, rather than with the staff.

where the issue of motivation is raised. *See, e.g., Oliver v. Digital Equipment Corp.,* 846 F.2d 103, 109 (1st Cir.1988); *Stepanischen v. Merchants Despatch Transportation Corp.,* 722 F.2d 922, 928–29 (1st Cir.1983); *Hayden v. First Nat'l Bank of Mt. Pleasant, Tex.,* 595 F.2d 994, 997 (5th Cir.1979). Nevertheless, where, as here, the plaintiff has failed to put forth facts that, if they exist, would seem to be easily discoverable, this Court will not hesitate to act. *Cf. Oliver,* 846 F.2d 103 (affirming an order of summary judgment where a discharged employee alleging racial discrimination had failed to establish a *prima facie* case or that the defendant's proffered explanation for the firing was pretextual); *Dea v. Look,* 810 F.2d 12 (1st Cir.1987) (affirming an order of summary judgment in an age discrimination suit where the plaintiff had failed to challenge adequately the defendant's articulated reason for the discharge); *Cartagena v. Secretary of the Navy,* 618 F.2d 130 (1st Cir. 1980) (affirming the entry of summary judgment for the defendant in a Title VII promotion case where the plaintiff had failed to establish a *prima facie* case and had also failed to produce sufficient evidence to suggest that the defendant's explanation of its action was pretextual).

### III. *Conclusion*

Digital's motion for summary judgment is GRANTED.